UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA CLAY,
o.b.o. W.G., JR.,

       Plaintiff,                                         Hon. Ellen S. Carmody

v.                                                      Case No. 4:05 CV 98

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff is not entitled to Supplemental Security Income under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on September 20, 1995. (Tr. 59). On July 9, 2003, Plaintiff's mother submitted an application for benefits on behalf of Plaintiff, asserting that Plaintiff has been disabled since September 1, 2002, due to attention deficit-hyperactivity disorder (ADHD). (Tr. 59-64, 70). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-58). On December 15, 2004, Plaintiff and his mother appeared before ALJ Steven Berlin, with testimony being offered by Plaintiff, Plaintiff's mother, and medical expert, Dr. Jeffrey Andert. (Tr. 240-82). In a written decision dated March 24, 2005, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 14-21). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).

## MEDICAL BACKGROUND

Throughout the 2002-03 school year, Plaintiff's second grade teacher, Frances Bean, completed a report regarding Plaintiff's progress. (Tr. 121-23). With respect to Plaintiff's performance during the first quarter of the school year, Bean reported that Plaintiff "is beginning to make better behavior decisions" and that his "frustration level is decreasing as his reading and math skills develop." Following the second quarter, Bean reported that Plaintiff "has made some nice

3

progress this quarter in reading and math" and "is working a bit more independently." Bean subsequently reported that Plaintiff "has made some nice gains [during the third quarter], especially in reading and math." She also reported that Plaintiff's "attitude towards school is a lot better." At the conclusion of the school year, Bean reported that "when [Plaintiff] decides he wants to do a good job in class, he produces some great effort." She concluded that Plaintiff "has made some wonderful gains through hard work and self-control." *Id.*

In January 2003, Anne Hoffman completed a report regarding her efforts to assist Plaintiff improve his reading skills. (Tr. 124). Hoffman reported that Plaintiff was "experiencing difficulty reading material at his grade level." She also reported, however, that Plaintiff's "attitude has improved a great deal this semester." *Id.*

In April 2003, Plaintiff (who was then in the second grade) participated in a series of achievement tests designed to assess his abilities in reading comprehension, concepts and problem solving, and language. (Tr. 125). The results of this evaluation revealed that Plaintiff's ability in these particular areas correlated with the following grade equivalents: reading comprehension (K.4), concepts and problem solving (1.7), and language (1.4). *Id.*

On April 24, 2003, Plaintiff participated in a neuropsychology consultation conducted by Sandra Bowker, Ph.D. (Tr. 131-34). Plaintiff exhibited "good" eye contact. (Tr. 133). His station and gait were "steady" and his gross motor coordination was "very good." Plaintiff demonstrated a ""positive and cooperative" attitude. He was "very interested" in conversation and contributed "appropriately" thereto during the examination. Plaintiff exhibited "adequate" attention and concentration, but experienced "some difficulty" processing verbal information. Plaintiff demonstrated "normal" thought content and processes. *Id.*

4

The following month Plaintiff participated in a series of achievement tests administered by Dr. Bowker. (Tr. 135-39). During these sessions Plaintiff was less cooperative and exhibited "short attention span, impaired frustration tolerance and minimal anger management skills." (Tr. 136). To complete the exercises, Plaintiff required "considerable prompting, cuing, and one[-on-]one support. (Tr. 136-37). Plaintiff's performance on the various tests revealed that his overall intelligence "falls in the solidly average range with particularly strong skills in all aspects of language based learning and vocabulary development." (Tr. 137). Plaintiff exhibited weakness in the areas of "reading and written expression." Dr. Bowker further observed that Plaintiff's "history and current presentation is certainly consistent with the presence of a fairly severe attention deficit/hyperactivity disorder as well as an oppositional/defiant disorder."

Dr. Bowker concluded that Plaintiff requires a "very high degree of structure and pre-organized material," as his "behavior deteriorates if he does not know exactly what is expected of him or if he perceives that he is failing." Accordingly, the doctor concluded that Plaintiff "will require direct support in unstructured settings (e.g. specials, recess) as well as a high amount of praise, reinforcement and an ongoing behavioral management program with prespecified rewards and consequences for specific behaviors." Dr. Bowker relayed these conclusions to Plaintiff's teachers. *Id.* Dr. Bowker also recommended that Plaintiff participate in "noncompetitive, community based activities," such as Big Brothers/Big Sisters. (Tr. 138).

In June 2003, Anne Hoffman completed another report regarding her efforts to assist Plaintiff improve his reading skills. (Tr. 140). Hoffman reported that Plaintiff "remains significantly below grade level at this time" and "will need to continue with reading support next year." Hoffman also observed, however, that Plaintiff "has put forth his best effort in the past few weeks" and "has

finally started moving from task to task more independently and he is not getting frustrated as easily." *Id.*

On September 17, 2003, Plaintiff's third grade teacher, Stacey Burmeister, completed a questionnaire regarding Plaintiff's level of functioning. (Tr. 149-56). Burmeister reported that Plaintiff's reading, written language, and math skills correlated to the .9, 1.0, and 2.5 grade levels respectively. (Tr. 149). With respect to his ability to acquire and use information, Plaintiff was evaluated in ten separate categories. (Tr. 150). According to Burmeister, Plaintiff experienced a "very serious" problem in only one category (reading and comprehending written material) and an "obvious problem" in one category (expressing ideas in written form). With respect to the remaining eight categories, Burmeister reported that Plaintiff experienced either a "slight problem" or "no problem." *Id.* Burmeister reported that Plaintiff experienced "no problems" attending and completing tasks. (Tr. 151). Plaintiff was assessed in 13 categories relative to his ability to interact and relate with others. (Tr. 152). Burmeister reported that Plaintiff experienced a "slight" problem in five categories and "no problem" in eight categories. Burmeister further observed that Plaintiff's behavior had improved since beginning medication to treat his ADHD. *Id.* Plaintiff was assessed in seven categories relative to his ability to move about and manipulate objects. (Tr. 153). Burmeister reported that Plaintiff experienced a "slight" problem in one category and "no problem" in six categories. *Id.* Plaintiff was assessed in ten categories relative to his ability to care for himself. (Tr. 154). Burmeister reported that Plaintiff experienced an "obvious problem" in three categories, a "slight problem" in four categories, and "no problem" in three categories. Burmeister also noted that "the ADHD meds have made a huge difference in [Plaintiff's] ability to cope." *Id.*

On October 14, 2003, Plaintiff participated in a consultive examination conducted by Robert Griffith, Ph.D. (Tr. 164-67). The results of a mental status examination were unremarkable. (Tr. 165-66). Plaintiff was also administered the Wechsler Intelligence Scale for Children - Third Edition, the results of which revealed that he possesses a verbal IQ of 93, a performance IQ of 102, and a full-scale IQ of 97, which correlates to the "average range of intellectual functioning." *Id.* With respect to Plaintiff's performance on specific portions of the examination, Dr. Griffith reported that Plaintiff scored in the "weak/borderline range (5th to 16th percentile)" in the area of "general and word knowledge," but scored in the "average range (25th to 75th percentile)" in the remaining nine areas. (Tr. 167). Dr. Griffith diagnosed Plaintiff with attention deficit hyperactivity disorder and oppositional defiant disorder. *Id.*

Following the second marking period of the 2003/2004 school year, Ms. Burmeister reported that Plaintiff "is progressing academically," but "has lost quite a bit of recess time due to conflicts on the playground." (Tr. 219). Burmeister reported that "[t]hese unstructured situations seem to be very difficult for him and often result in physical contact with other students." Burmeister concluded, however, that "[w]ith the new learning accommodations in place, [Plaintiff] has the potential to really grow and he is already doing that nicely this year." *Id.*

Psychological therapy treatment notes dated November 26, 2003, indicate that Plaintiff's condition was "mild" to "moderate" in severity and that he was making "adequate" progress. (Tr. 228).

In January 2004, Anne Hoffman reported that Plaintiff "put forth nice effort in the reading room during this semester." (Tr. 215). She also reported that Plaintiff possesses "the basic

decoding skills" and "can use them in isolation," but "struggles with reading longer text." Hoffman concluded that Plaintiff "is a hard worker and has demonstrated great determination." *Id.*

Treatment notes dated July 1, 2004, indicate that Plaintiff's ADHD "seems to be fairly well controlled" with medication. (Tr. 174-76).

On November 8, 2004, Jill Angell, a social worker employed by Family and Children Services, reported that in August 2004 Plaintiff began participating in the Community Living and Support Training Program. (Tr. 239). Angell reported that Plaintiff "is working on learning appropriate anger management skills and learning to interact with peers." With respect to Plaintiff's progress, Angell reported that

> [Plaintiff] listens to staff after the first prompt and interacts with peers in a positive manner. Occasionally, [Plaintiff] has difficulties managing his anger. Overall, [Plaintiff] enjoys the program and get[s] along well with his peers.

*Id.*

At the administrative hearing, Jeffrey Andert, Ph.D., testified that Plaintiff suffered from two impairments: (1) attention deficit and hyperactivity disorder, and (2) oppositional defiant disorder. (Tr. 272). Dr. Andert concluded that Plaintiff's impairments, whether considered individually or in combination, neither met nor constituted the functional equivalent of any impairment identified in the Listing of Impairments. (Tr. 273-74). With respect to Plaintiff's ability to function, Dr. Andert testified that Plaintiff experienced: (1) less than marked limitation in the area of acquiring and using information, (2) less than marked limitation in the area of attending and completing a task, (3) marked limitations in the area of interacting and relating with others, (4) no limitation in the area of moving about and manipulating or handling objects, (5) less than marked

limitation in the area of caring for himself, and (6) less than marked limitation in the area of overall health and physical well-being. (Tr. 274-76).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

**B. The ALJ's Decision**

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from (1) disruptive behavior (including attention deficit hyperactivity disorder and oppositional defiant disorder) and (2) learning disabilities. (Tr. 15). At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-17). The ALJ further determined that Plaintiff's impairments do not functionally equal in severity any impairment identified in the Listing of Impairments. (Tr. 17-20).

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

      (i)     acquiring and using information,
      (ii)    attending and completing tasks,
      (iii)   interacting and relating with others,
      (iv)   moving about and manipulating objects,
      (v)    caring for yourself, and
      (vi)   health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that Plaintiff experienced marked limitations in his ability to interact and relate with others. (Tr. 19). The ALJ found that Plaintiff experienced less than marked

limitation in the following areas: (a) acquiring and using information, (b) attending and completing tasks, (c) caring for himself, and (d) health and physical well being. (Tr. 18-20). Finally, the ALJ found that Plaintiff experienced no limitation in his ability to move about and manipulate objects. (Tr. 19). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

1.      The ALJ's Decision is Supported by Substantial Evidence

Plaintiff has not challenged the ALJ's determination that he does not suffer from an impairment which meets or medically equals a listed impairment. Instead, Plaintiff challenges the ALJ's conclusion that his impairments do not functionally equal a listed impairment.

a.      Plaintiff's Ability to Interact and Relate with Others

As noted above, the ALJ concluded that Plaintiff experienced marked limitations in his ability to acquire and use information. Plaintiff counters that there exists substantial evidence that he experiences "extreme" limitations in his ability to interact and relate with others.

First, it must be noted that the question before the Court is whether there exists substantial evidence to support the ALJ's decision, not whether there exists substantial evidence to support an alternative evaluation of the evidence offered by Plaintiff. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003) (the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ").

A "marked" limitation is defined as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  A "marked" limitation is "more than moderate," but "less than extreme" and is the equivalent of "the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*

An "extreme" limitation is defined as one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the equivalent of "the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*

In support of his position, Plaintiff relies on his mother's testimony that he regularly fights with other children and has been suspended from school numerous times as a result of his inability to act properly.  (Tr. 249-66).  Plaintiff also relies on an October 20, 2004 report completed by his special education instructor, Miss McCue.  (Tr. 111-12).  According to McCue, Plaintiff "is always aggressive physically [and] verbally towards students [and] staff."  (Tr. 111).  She also reported that Plaintiff "punched a boy" the previous day.  McCue reported that Plaintiff's behavior is not affected by his medication.  *Id.*

As detailed above, however, there exists substantial evidence supporting the conclusion that Plaintiff's limitations in this particular area are much less severe.  Plaintiff's third grade teacher, Stacey Burmeister, reported that he experienced only "slight" problems in his ability to interact and relate with others.  (Tr. 152).  Burmeister also observed that Plaintiff's behavior had improved since he began taking medication to treat his ADHD.  *Id.*  Treatment notes reveal that Plaintiff's ADHD is "fairly well controlled" with medication.  (Tr. 174-76).  A November 8, 2004

12

letter authored by Jill Angell indicates that Plaintiff was making improvement with respect to his ability to interact and relate with others. (Tr. 239).

The question is not whether Plaintiff experiences difficulty in this particular area, as he most certainly does. Rather the question is the extent of Plaintiff's difficulty. While Plaintiff has identified certain evidence which *may* support the conclusion that he experiences extreme limitation in this area, there is no question that the ALJ's determination that Plaintiff experiences only marked limitation in this area is supported by substantial evidence.

b.  <u>Plaintiff's Ability to Acquire and Use Information, Attend and Complete Tasks, and Care for Himself</u>

Plaintiff asserts that even assuming that he experiences only marked limitation in the ability to interact and relate with others, he also experiences marked limitation in the following areas of functioning: (1) the ability to acquire and use information, (2) the ability to attend and complete tasks, and (3) the ability to care for himself. With respect to these particular domains, the ALJ concluded that Plaintiff experienced less than marked limitation.

While Plaintiff experiences certain reading difficulties, testing reveals that his overall intelligence "falls solidly in the average range." (Tr. 137). Stacey Burmeister reported that while Plaintiff experienced difficulty (a) reading and comprehending written material and (b) expressing ideas in written form, he experienced only slight (or no) problems with respect to his ability to acquire and use information. (Tr. 150). The following year Burmeister reported that Plaintiff "is progressing academically." (Tr. 219). As for Plaintiff's ability to attend and complete tasks and care for himself, Plaintiff's teachers reported that Plaintiff experienced less than marked limitation. (Tr.

121-23, 140, 151, 154, 215). In sum, the evidence reveals that Plaintiff's limitation in these areas does not seriously interfere with his ability to independently initiate, sustain, or complete activities. The ALJ's conclusion, therefore, is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 1, 2006  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge